also known as Petro Zagorski Appellant. Mr. Jeffress for the Appellant, Mr. Ewing for the Appellant. Good morning, Your Honor. May it please the Court, John Jeffress on behalf of Appellant, Mr. Zagorski. The District Court's sentence in this case involved two significant guideline errors as well as a clearly erroneous factual finding. Mr. Zagorski's sentence should therefore be vacated and the case remanded for re-sentencing. This case is about the sentencing guidelines and how the government, which is the architect of the sting operation here, chooses to present the underlying facts to defendants such as Mr. Zagorski. The way the government presented this sting is so as to lower the moral barriers to entry for defendants such as Mr. Zagorski, which in turn lowers the necessary degree of culpability. Specifically, the way Detective Palachek sells this sting is that he had been involved in a sexual relationship with the fictitious minor for a very long time, and that engaging in a webcam show, which is Detective Palachek's idea, is something they both affirmatively want to do and in fact had attempted to do very recently with a different third party. You seem to be framing it in terms of the requisite intent for the defendant, but isn't the real effect of what you're saying on the application of those magic verbs, incite, promote, etc., etc.? Yes. And if something seems to be looming up, let's say this encounter, and all the energy for it seems to have been coming from the government side, not all but most of the energy, then that draws in question whether there's been inciting, etc., by the defendant, right? Yes. I mean, these are verbs of causation, I think. And so you sort of look at which side of the equation is the impetus for the conduct that the guideline seeks to penalize. Although, I mean, there's no law of life that says there can't be impetus from two sides. No. And I mean, here it is. I think we all recognize it's certainly Detective Palachek's idea. But we wouldn't rest alone on the fact that it's his idea. We'd rest also on how he presents this. I mean, what we're struck with, I think, these guideline provisions that, you know, the central blameworthy choice that these guideline provisions seek to penalize more greatly is whether you are willing to entice a minor to do these things, whether you're willing to speak to a minor in a way that... I was going to ask, why the focus on entice? Because I get that the district court used that word in its oral rendition, sort of in a summary of what the district court was doing. But in explaining its reasons, the district court referred back to the government's memorandum and the probation office's response to your objections. And those, at least the government's memorandum, specifically focuses on the blanket word under the initial provision, which is cause. Right. So, I mean, cause is not as good for you. Cause is not as good. Right. But it seems to me that that's the word that's an issue because the district court did rely on the government's memorandum. And the government's memorandum specifically identifies cause and, in fact, has an ellipsis with respect to the rest of the provision. Yeah. Well, I think the government, rightfully, has not relied on that here because I think the theory of causation is still too attenuated to really make this point. Why? Why is it attenuated? Because, I mean, basically, their theory has to be, okay, he indirectly, I mean, first of all, the way Detective Palachuk presents this, again, is to prevent Mr. Zagorski from having to struggle with this issue. And the way he presents it is, I've already caused this. This is going to happen. We've tried to make it happen. It'll happen with someone else. Let's prevent Mr. Zagorski from ever having to say, you know, am I going to, like, am I going to really reach out to a minor and do something like that? No, but, I mean, instead of paying with videos, if it's just a payment with cash, and if the adult intermediary says, you know, if you pay me a certain amount of money, then we'll have a webcam show to your liking. Well, who is that causation theory focused on? It's focused not on the minor. It's not saying, I'll then give these images. Sure it is. It is focused on the minor because the minor's not going to appear for the webcam unless the individual pays the money. Well, but the money's not going to the minor. I mean, in what case— Why does that—I don't understand why that matters because it's still causing—it's still bringing about by causation because the individual says, if you pay me X amount of money, I will have a video. I'll have the person appear for you. That's cause. Well, I mean, what Your Honor is describing is an indirect theory of causation, which would be through the adult intermediary. And the adult intermediary isn't saying— I don't think it's an indirect theory. It's true that there's a step, but I'm not sure—the theory doesn't seem indirect. The theory seems directly direct to make direct squared because what you're saying is, if you give me X amount of dollars, this will happen. And I can make it happen. There's no playing the joints on whether I can make it happen. It will happen. That's causation. It's been happening. It just tried to happen recently with someone else. Well, how about this? If you don't give it to me, it won't happen. No, he doesn't say that. But I mean, it's hard to imagine that that can't be read into— I mean, if he said that, or if he said, you know, she's never done this before, but look, look, if you give me this, if you give me this, I'll make it happen. But I don't understand why it matters if she's done it before, I guess, because the point is, I will make it happen for you if you give me X amount of money. Because he could certainly—I could certainly—just cause it's happened before, I'm not resting solely on that. He could certainly re-entice. But the question is whether he has that sort of intent or whether he takes a substantial step towards that. Merely agreeing to trade—I mean, you have to look at it under the attempt analysis. This is obviously an attempt, even though that section doesn't say it applies to attempts. But even assuming that it does, you know, to look at, does he have that kind of mindset to try and persuade that miner? And merely by agreeing to the defense—to the U.C.'s proposal, hey, look, if you give me this, that sounds—we'll give you the webcam show. That is attenuated, because that's not saying that he's causing it. They're already doing it. It's just in this specific instance, look, I'll make this available to you. I'm not even sure why it has to be that you have to cause—you just have to cause the thing to happen. And there's an adult intermediary who claims to have—and by all assumptions does have, because that's the nature of these dynamics—complete custody and control to tell a miner what to do. And the adult intermediary says, I can get this to happen for you if you pay me $100. Now, your theory seems to me—seems to me to indicate that, well, as long as the adult intermediary goes on and says, I'll give a dollar of that $100 to the miner, then all of a sudden we've got an incredible difference. And that just—it's hard to imagine that that's what the framers of the guidelines had in mind. I mean, I think they're focused on the effect of the miner. And they're focused on the intent of the defendant. I mean, this is all fictitious, right? None of this really even exists. So clearly we're just focusing on the intent of the defendant. And, you know, I mean, you look at different things. You look at, you know, how often did he contact the police officer? In this case, the police officer contacted him 10 of the 11 times. You look at, you know, what did he say that could possibly be construed as persuasion or causation of the miner to participate in this conduct? And there's just nothing like that. Well, let's just strip all that away just for present purposes. None of the facts are complicated, and there's facts that support either side. Right. But let's just suppose that the defendant goes into a—and I may be getting the terms wrong—a chat room and says to an undercover agent, does anybody out there have a miner that they can get to appear on a webcam? I'll offer X amount of dollars for that to happen. Okay. And then it's an undercover officer, and that officer says, I do. I can make it happen if you pay X amount. Now, would you agree that in that situation the guideline would be implicated? Well, yeah, that's seeking by notice or advertisement. So, I mean, the guideline already— Oh, no. Okay. Okay. I see. Well, the language is different, but just for causing. I mean, I think the fact that they put that in there, seeking by notice or advertisement, shows that they did expressly seek to manage that situation. I mean, what Haidt and other canons of statutory construction teach us is that you look at the word by the company that it keeps. And in this case, I do think what the sentencing guidelines were focusing on is someone who will take that morally blameworthy step of attempting to persuade a miner to, as Haidt says, to move her by persuasion or influence to participate in this program. Now, Haidt didn't have cause. I'm sorry. I'm not sure why you keep fighting on cause, which I think is one of your most vulnerable areas. Government, if I understand it correctly, to win on this has to win on 1B6. It doesn't have the word cause, and it does have the requirement of the computer. Yeah. So isn't that the strongest domain for your argument? Certainly, that's why we think the two-level increase under B6. Yeah, B6. That's what you're fighting. That's the second issue. The first would be that the cross-reference from two-level. That's right. Unless I'm completely mistaken, you can lose on the cross-reference. And then if the thing to which it refers doesn't apply, then the height goes up, right? Well, first, they do have this cross-reference, which, as Judge DeVos points out, has the move to 2G2.1. Yes. All right. And so that puts you in a different guideline altogether, and it does have the word cause. I'm sorry. And that one has 10 levels, right? That's the one that bumped it up from 22 to 32. Right. And then there's a separate argument as to a different sentencing. I see. So we only reached the two-level one if the cross-reference was correct. But if the cross-reference was correct, then we do reach the second issue, which Your Honor rightly points out. I mean, there's just nothing here, I mean, in terms of the computer, in terms of the persuasion of the minor or the custodian. No. And on that issue, and I think on both of these issues, what happens on that November 8 phone call, which I think, with respect, the district court judge misconstrued, is very important. Because during that phone call, he's given the opportunity to show whether he's someone that would engage in this kind of conduct. I mean, not only is he given the opportunity, really. He's given every encouragement beforehand by the police officer. And then really during the call by the other police officer who's portraying this minor, he's given encouragement by her to do that as well. And so what does he show during that phone call? He shows that he's just not willing to take this step. He's just not this kind of offender. But he definitely wants to take a step of offering up videos in exchange for a webcam. He says that repeatedly. He says that after, okay, the government, he says that after it's been propositioned to him by the district court judge. It was planted initially by the undercover agents. There's no doubt about that. But look at who he thinks he's dealing with in that situation. He thinks he's dealing with someone who's already got this thing ongoing. And it's just whether he's going to be included. And I think Judge Bozberg's opinion in the Nitschke case we cited is very correct here. It's just whether you're going to join in on an activity that's already going on. No, but there's a big difference with Nitschke. Because in Nitschke, I think Judge Bozberg was careful to explain in a separate section of the opinion that this is not a case in which the adult intermediary claims to have custody or control over the minor. And that makes that case quite different. This is very much a case in which you have an adult intermediary who's presumed to have custody and control over the minor. Well, the custody and control, I think, was just one small part of Nitschke. But even if he had been under this scenario, I think it still would have come out. Because what you're really looking at, ultimately, again, is the defendant's intent. Is he the kind of defendant who's going to take this step? And in Nitschke, you're dealing with a statute. Am I right? Yeah, you're dealing with a statute. Yeah, and here, first of all, the guideline has the word cause, which the statute doesn't. And height makes a big difference and makes something of that. And secondly, here you have the separate provision that explains the guideline that says this section is to be, quote, construed broadly, close quote. So you've got kind of an anti-rule of lenity. Oh, yeah, that's true. But also, in contrast to other sections in this area, the guideline commentary to that section specifically says this can involve an adult intermediary, whereas this one doesn't. So I think they're already in the assumption that we're in a world where the defendant is directly communicating with a minor. And the government could construct this sting operation very differently to see whether a defendant would take that morally blameworthy step. But he didn't do that here. And what it says that he didn't do it, it's that despite being given the opportunity and, I would say, the encouragement to do it, he didn't do it. So he just shouldn't be punished. His guidelines shouldn't be calculated as if he's that kind of offender. Mr. Jeffries, both in brief and a few moments ago here, you said assuming that the guideline covers attempt, which is something you would expect to see after arguing that it doesn't. And then saying, well, OK, assuming it does, going on from there. But I don't see you arguing that it doesn't. Well, I mean, there is one case out there that says that, from another circuit, that says that it does. We couldn't find much law on this. So that wasn't what we chose to rest our primary arguments on this. But the statute 2422B, which this guideline largely tracks, does say anyone who engages in this conduct, entice, induce, persuade, coerce, or attempts to do so, she wouldn't be punished under this statute. This guideline provision, which largely tracks that statute, doesn't say or attempts to do so. So I mean, it is a noticeable omission from this statute. But that's been our argument up to this point. Right. And the way you brief it, you assume that it's an attempt. And then you rest it on the other. Right. Is that right? That's right. It's fair to say. OK. Yeah. So unless there are more questions, I'd like, well, just jumping to the B6 issue, the second issue, if they do find that the cross-reference applies, sentencing is still required here because of the issue Your Honor pointed out, which is the two-level enhancement. There is just, the government, there is no record evidence that this call was for the court found, which was for Mr. Zagorski to entice them by. But what about the computer used to solicit? And that's the other issue. I mean, he's not, even if the district court was relying on the phone call for that finding. Why do you say that? Well, I mean, in his oral ruling, the district court did not specify, didn't really break down the two different issues, didn't break down the enhancement versus the two-level, I'm sorry, didn't break down the cross-reference versus the two-level enhancement. Didn't address them separately, sort of addressed them in one opinion. Right. And during that opinion, relied heavily on the phone call, on the November 8 phone call. Well, he relied on the phone call, but he also said he was relying on the reasons given by the government in its memorandum and by the probation office, which I don't, correct me if I'm wrong, but I don't remember those being focused on the phone call as opposed to the computer use. Well, even assuming that he didn't rely on the phone call, if I could just go to my other arguments then. I mean, looking at the flip side of what Your Honor just said, which is the word cause is used in the cross-reference. The word cause is not used. But solicit is. Solicit in two, and it's unclear which subsection the district court was relying on. Probation relied on one thing. The government relied on another thing. So we really don't even know exactly how that ruling breaks out in terms of the specific subsections. But Your Honor is referring to the little two subsection. And that would be solicit with. And the word solicit just can't possibly apply to this situation, not under its dictionary term. I mean, this is all, the dynamics of this thing operation, all of these ideas are coming from the officer. I mean, and so you don't. But if the officer, I'm sorry, if the officer forgets, you're right, the officer introduces the idea. And then the officer sort of lets that go for the next few exchanges. And then the defendant raises it again and says, hey, don't forget, we've got this offer on the table to perform a webcam. I still would like to give you some videos in exchange for a webcam. At that point, isn't the defendant soliciting? No, I don't think that, well, that's not quite how it happened here. I think the officer brought it up more often. But no, if someone solicits you and says, hey, I'll give you tickets to a baseball game if you give me $5. And then the next day you say, hey, you wanted to give me tickets to that baseball game for $5. Here's $5. I don't think he solicited. I think that's the word solicit. And again, we're trying to look at capture of culpability. And so we look at what the defendants would do sort of left to their own devices or with just opportunities presented to them, not what's affirmatively proposed and pushed by the undercover officer. So I think that's why that provision doesn't apply. Thank you. Thank you. Good morning. May it please the court. James Ewing for the United States. This court should not disturb the district court's below guidelines sentence because the district court's application of the guidelines and its calculation of the guidelines was correct. Turning first to the cross-reference and the issue of whether the cross-reference applied, Judge Turner-Botson, we agree with the questioning that you were doing at Appellant's Counsel in the sense that this was an express quid pro quo of seeking to cause this webcam show by offering child pornography in return. And in addition, this is not a situation where this was some sort of indirect persuasion, inducement, or enticing object. You don't dispute the fundamental point being made by opposing counsel, which is that the idea came from the undercover agent. Well, OK, so the webcam itself was first mentioned by the undercover. But I do want to take on this concept that this was kind of all the government's idea. If you go back to the very first chat on October 24th of 2011, Appellant is the person that brings up child sex first. He said, you ever play with young? Appellant is the person who brings up child pornography first. You ever take any pics? Appellant is the person who initially asked, you know, hey, I know you probably won't send them to me, but I would ask otherwise for some of these pictures. So this is not a situation where, you know, this appellant is somehow having to be led by the nose down this path. But with respect to the webcam, which the entire argument for purposes of the cross reference rests on the idea that the defendant is offering something up. You can call it videos. You can call it a substitute for currency. But he's offering something up in exchange for getting a webcam presentation by a minor whom the person who he's dealing with controls. That's correct, Your Honor, because that's the live broadcast that's mentioned in the cross reference. But even going back to the concept that, you know, this may have been the undercover agent's idea first. But then just look at what happened after that. You look at Appendix 73 from Appellant. So when are we going to do cam? Appendix 77. Let's do cam soon. Appendix 85. How about cam? So he is being proactive about this. He is insistent about this. This is what he wants to happen. He is trying to make this occur. So that's the context leading up to from October 24th to this phone call on November 8th in five chat sessions.  So, you know, there's a lot of the words together and did not run away from the word entice. Embraced the word entice. And you may have an argument that says they all apply. But it seemed significant to me that in your memorandum in the district court in connection with sentencing, you relied on the word cause. And then it lifts out the rest of the provision. Right. We're relying on cause and the commentary which talks about persuade, induce, entice. We know, for example, from the Johnson case that the commentary is authoritative on essentially as long as it doesn't violate a statute or the constitution that it's authoritative on the same level as the guidelines itself. And we do think that, you know, going back to the factual findings that the district court made about this phone call on November 8th, he made two factual findings, neither of which are clearly erroneous. First, he said that the purpose of this phone call was to make the 12-year-old child, which, oh, by the way, appellant was speaking to directly on that phone call, to make that 12-year-old child comfortable with the idea of doing this webcam show. And potentially having... I mean, that isn't the way Palachuk presented it, right? I'm sorry. Meaning what, Your Honor? Palachuk didn't say, be good if you came into this, we had a conversation with her so as to ease her anxiety or something. Nothing like that. Well, actually, appellant said that himself at appendix page 74. He specifically said, and this is before the phone call, if you want, I can talk to her on the phone first and then we can do cam. So appellant himself... That sets up the sequence, doesn't set up the purpose. Right, but the purpose is looking at the purpose... Didn't Palachuk explicitly say this to, as an assurance that I'm not a scam? Right, well, Your Honor, our position is it could be both things. It could be... The question is, what is the evidence for its purpose? When you get to the effect, of course, it may be different. But when you get to the issue of purpose, I haven't seen anything you've said yet that suggests that that was a purpose of the defendant. Well, for example, going to the purpose of the defendant to make this child comfortable to do this webcam show, for example, before the call took place, the two... The detective and the appellant are kind of gaming out the call and see how it's going to go. Appellant says, you know, is she going to ask me any sexual questions? And talking about, you know, what she is going to be willing to do on the webcam show, what she's going to wear, you know, telling Detective Palachuk, you know, I prefer gowns or skirts, and talking about different things that she would do on that. He's doing that in the context of Palachuk having assured him that the girl will do what he says. He Palachuk says. Well, the fact that... Right. Your Honor, the fact that this 12-year-old child might have been willing in a general sense does not go to whether this appellant could form the intent to cause her to do this webcam show. It doesn't preclude it, certainly, but it sets up a context in which we have to look at the other statements. And incidentally, the opening brief of the defendant says that for purposes of B-6, a phone does not count as a computer, and I didn't see any response by you to that. I believe there's case law that agrees with that, Your Honor. You didn't assert it at all. We're not relying on... Well, there's some case law that talks about smartphones and things of that nature. We're not relying on the phone call for the application of the B-6. As to that, I mean, an appellant was correct. You don't get there until the cross-reference is properly applied because that's in two... So kind of jumping to that, we would rely on the appellant's use of the computer to persuade, induce, entice the minor. If you look at the commentary to that particular provision, it expressly contemplates this contact with an adult intermediary. It says with the... No, no, I think it's now clear circuit law that the conversations with the adult intermediary count, and if he seeks to entice the child through the adult intermediary, it's covered, but you still have to have the enticement. And, again, we're still talking about the two B-6 as opposed to the cross-reference because, I mean, I think in the cross-reference, the phone call is part and parcel, too. Right. I agree with you entirely. You didn't use the word solicit just now when, in response to Judge Williams on the B-6 one, you used persuade, induce, entice, but you didn't use solicit. Is that an inadvertent omission or... It was inadvertent here today. I think all four of those, we would argue that all four of those pertain to appellant's kind of conduct. And now we're talking about B-6, we're kind of limiting it to the computer aspect. He is persuading, inducing, enticing, soliciting that minor, not... I mean, he's going through the adult intermediary, but we know from HITE that, and that's in a 24-22 context, we know that it's possible to persuade, induce, entice a minor through an adult intermediary. That's what's going on here, really kind of in two ways. One, again, limiting just to the computer for the B-6 argument, he's directly, well, he's enticing, persuading, inducing, enticing the minor by talking about things like, what is she going to do on the webcam show? What sorts of things will she say to me? And then at one instance in the... I just, those sound like questions as to what's on offer from you, Mr. Palachuk. Well, it goes to kind of who is the target? Who is the target of this kind of, of this persuasion? There's no doubt that the defendant is interested in what the minor does, but the question is, what is he doing to persuade, induce, incite, solicit, so forth, the minor? Well, for example, at one point he asked Detective Palachuk, do you think she would dominate me if asked? So this is a concept of, what is she, what are we going to be able to get her to do? I mean, that sounds like you go up to a store and you ask, how does this work? There's a gizmo in a plastic case. What does it do? The person behind the counter says it does A, B, C. You aren't trying to persuade the machine to do A, B, and C. Well, I guess the concept of, for example, the word entice, to lure, and Haidt described kind of, to lure, induce, tempt, incite, this, just because this 12-year-old child might become generally willing does not mean that she's willing to do these things with a pellet. He's trying to lure her to do certain actions, to wear certain things, to take certain actions. Did Palachuk's certification of her readiness have that qualification? She does it all the time, but she might not do it with you. I didn't see that. I don't think it was, it wasn't as strong as she does it all the time, Your Honor. There was some discussion about her potentially doing it with another father who, and that webcam show never even occurred. So, you know, there was some aspect of Detective Palachuk saying, you know, she's generally willing, but that doesn't get us to whether this appellant can't, that doesn't mean that this appellant can't persuade, induce, entice this. Interestingly, this was the- I agree that the two are consistent, but it requires factual data to add the second point. And it's tougher for the government where the record shows this apparent, some very substantial level of willingness preexisting. I guess, you know, we believe that the record does support that. It's somewhat odd to be talking about a willing 12-year-old child when it comes to, you know, having sexual interaction with an adult. Because, I mean, of course, the law says that a 12-year-old child can't consent to sex. But, you know, to the extent that we need that persuade, induce, entice of the child- If you're relying on that, then the whole entice, persuade, induce verbiage is meaningless. The whole bending of the will idea goes off. I mean, well, in a way, that kind of goes back to Judge Srinivasan's questions about the word cause. I mean, if you're causing- This is- Now we're talking back with the cross-reference again. But if we're- If you're causing this 12-year-old child, whether you're doing it by this express, quid pro quo or otherwise, then, you know, that's enough for the application of the guidelines. We agree that the second issue is more narrow. But we- Based on the second issue, is the end game with respect to the second issue the webcam? Or is it some direct contact, face-to-face interaction? I think it could be either, Your Honor, because both are discussed in the kind of the context of those five webchats between October 24th and November 8th. What's interesting is that, going back to this- But was your argument- You're talking about in the brief, Your Honor? In the brief or before the- Well, I believe that we focused on the webcam. But the concept that these two were talking about this potential, you know, in-person meeting- If you focused on the webcam, can I just ask one quick follow-up question, which is, if you focused on the webcam, one of the responses that you gave to Judge Williams was the notion that the defendant introduced this idea of being dominated? Right. Well, that would go to- That can't apply to the webcam. Correct. So that would go to, you know, a potential in-person meeting, which would also pertain- I mean, this is a difference between the cross-reference specifically pertains to either the webcam show or production of some sort of other type of child pornography. The 2B6 can go to either. It can go to an in-person interaction or it could go to, you know, production of child pornography. And how much did each of these arguments contribute to the guidelines? I mean, there's a separate argument as to whether the guidelines sentence matters at all. I'm not talking about that. But in terms of the development of the application of the guidelines here, how much did the first argument contribute to the sentencing range and how much did the second one? I'm sorry. I'm not really fully understanding your question. So with respect to the cross-reference. Okay. Right. So the cross-reference raised it by 10 levels. And once you're kind of over there, the second issue raised it by two levels. So it would have been, you know, kind of the cross-reference is a big ticket item, if you will. Okay. I see I've got about a little bit of time left. I would just note that we did brief a harmlessness argument here. We believe that that's a valid argument. This was a 99-month sentence. The, you know, the pre-sentence report writer, the district court, and the government calculated the guidelines at 240 months. The district court said, you know, I think the child pornography guidelines are flawed. I don't think they're rational. And if you look at how he was kind of coming up with this 99-month issue, he talks specifically about looking at similarly situated defendants that he had sentenced. So he's not basing, even assuming error in the guidelines, which we don't believe that there was, he's not using the guidelines for the purposes of his sentence. Haven't we had quite a few cases where the sentence is well below the guidelines minimum, but in order to make sure that the district judge uses the guidelines as the frame for departure, the calculation is correct. Right. That's, the Hype case says that, Your Honor. Hype is a little different because the, well, for a couple of reasons. First, the sentence that ended up coming out was in the range that the appellant calculated. Here, even giving appellant the benefit of the doubt that his 151-month to 188-month sentence is correct, we're still 52 months below that. And what Hype said, what this court said in Hype was, a properly calculated guideline range likely would have helped appellant. That likely would have helped language just simply doesn't apply here. Because we, because, you know, Judge Wilkins basically through the child pornography guidelines under the bus, he said he wasn't relying. I mean, he didn't say. That's a strong formulation of it. Well, he said, he said, he said they're not rational. He said that he, that. If every time a district judge said that of the guidelines, these cases would never come up, right? Well, all error would be harmless. I guess my only point in bringing that up, Your Honor, is that that likely would have helped language from Hype simply doesn't apply here based on Judge Wilkins' language. If there are no further questions, we would ask that the judgment of the district court be affirmed. Mr. Jefferson, we'll give you two minutes. I know we, at least I, occupied a lot of your time, so please. Thank you, Your Honor. I, just very briefly, there are a couple of things that the government said that, they also get wrong in their brief, so I want to point out. One is that the undercover officer mentioned that Mr. Zagorski was the first to bring up, you know, the issue of child sex. That's not really how this played out. On appendix page 59, when the undercover officer is introduced, he wants to get right to the point, and so when he introduces himself, he says he's into young, and then he says dating a girl that has a 12-year-old, been dating her for a while, nothing too serious. I mean, so he's already strongly suggested this activity. It did not come out of left field for Mr. Zagorski. Second is that the phone call was not first brought up on appendix page 74 by Mr. Zagorski. As Judge Sherman already said, noted in my argument, it was brought up first by the detective on appendix page 64, and I think the way that it was brought up shows why, you know, our interpretation of that phone call is correct, which is just that he says, he first brings up that phone call by saying, now I will have to get a few of your videos before the cam thing. That is way risky for me. I will let you talk with her before on the phone. So, I mean, you know, he's accompanying it or pairing it with a security concern, but then that is really the only understanding of that phone call that's played on between the two of them from then on, and, you know, really the record is littered with security references to the officer not being a scam. So the point is to show that he's real, and that's the only thing that actually, that's  If your assertion in your opening brief, which is not refuted by the government's brief, that the phone doesn't count for purposes of B6, if that's correct, or at least must be assumed as correct for purposes of this litigation, do you have to, well, does the phone call have any significance? I mean, I think the government is using it to color the things that go on over the computer. I'm not sure that's what the district court did, and I'm not sure that's what the government is doing, but the phone call, I mean, I think, first, a smartphone can be used as a computer if it's, you know, used on the internet and stuff like that, but as the government acknowledged, I don't think they're taking that position here that a phone call You break it down by the use as opposed to what the person has in his hand. And I think it could be used as evidence to illuminate the chats, but largely the chats speak for themselves, and I think they're pretty clear, so nothing from the phone call really adds to that. I mean, Mr. Szygorski says very little of substance. But I thought the phone call was relevant not just to B6, but also to the cross-reference, because the way the district court described it, the phone call had a purpose, and the purpose was to, I forget the colloquialism that's used, comfort, right. But that's not the way it's characterized in any sense between the detective and Mr. Szygorski. I'm just talking about the potential relevance of the phone call goes not just to the second issue, but also goes to the first issue. You have a factual argument as to why the district court got wrong on what the phone call did. The district court actually said the entire purpose of the call was to comfort the person. It's to comfort the minor, right. And in fact, I mean, the record of evidence, I don't think it would be much more clear that it's for the purpose of comforting Mr. Szygorski. At the very least, it's not the entire purpose. Not the entire, but I don't think it's any purpose. And what goes on in the phone call, I think, sort of only corroborates that. But do you agree that we'd have to say that the district court clearly erred in order to sustain your argument on that? Because that is a factual issue. If that's a factual issue, I mean, I was wondering before this whether maybe that's an application of guidelines to the facts, but erred in one sense of that. But even under the higher standard, which would be clearly erroneous, I think that is a clearly erroneous finding. Yes. And just to be clear, I think I said this, but we're not saying that you could not re-entice a minor who's already purportedly been enticed. That's not our position. We're just saying it didn't happen here, which is especially noticeable on that November 8th phone call where Mr. Szygorski's given the opportunity to have that kind of interaction with the fictitious minor and doesn't do so. And so, I mean, that's really what we're saying when we're looking at his intent. And, Your Honor, just to point out, on the B6B issue— Excuse me. On B6, let me just ask you a question. The latter part of B6, too, is using the computer, et cetera, to solicit participation with a minor. Yeah. Presumably, that's at least includes, maybe only includes, maybe it's only soliciting someone other than the minor himself. That's right. And that's what the Second Circuit— That's the U.C. That's what the Second Circuit has said. And I—but I just hear, you know, there was no reason to solicit Detective Palachuk to do this because he said this is something he's already been doing for many years and does regularly. And, you know, in any event, Mr. Szygorski didn't solicit him because he didn't propose or urge him. Wait a minute. He sent—he distributed porn to him, right? He did do that. And that—isn't that by way of soliciting the participation with a minor in the custody of the U.C.? I mean, the way it's customarily proposed is to approach with a proposal and, you know, solicit. And that's not what Mr. Szygorski did. Mr. Szygorski was the one that was solicited by the U.C. The U.C., you know, again, this was his proposal. So he approached Mr. Szygorski with a proposal. I mean, suppose that the sequence is, as I think you've suggested, okay, the U.C. introduces, let's say, the webcam, puts that on the table, right? Because the government says the defendant keeps coming back to soliciting. I don't see why the first to put it on the table precludes the subsequent solicitation. If you—I mean, if you look at the cases, I think what that's usually used for, solicit with, is someone who goes to—approaches someone who is purporting or is the parent or something like that and tries to urge them to do different things with their minor. That's really not what is happening here. The sequence just doesn't play out that way. Detective Palczyk solicits him, and then, yes, he does, you know, after that, say, are you going to do this or are you going to do this? But I don't think that fits. So the second, the are you going to do it or are you going to do it, is not solicited? Are you going to do it? No. Not after it's been brought up by Detective Palczyk and, I mean, brought up multiple times. So there's only one solicitation that's possible? I mean, I suppose there could be a sufficient lapse of time or subjects and everything for there to be a re-solicitation. Now, as I understand the facts here, the—Mr. Zagorski said at least one juncture that if we do the webcam, I'll then send you some more videos. At one point, yeah, that's it. So that's not dealing with—that's dealing with a future compensation, right? He's—so in a way, that's its own act of solicitation because— I mean, you know, the sentencing guidelines, they already have a specific five-point enhancement for trading it for a thing of value, right? Trading for the—trading the child pornography for a thing of value. So he's already sort of been punished. And I think that's what the government's getting at. That could be the only real theory is that he's trading this. He's offering consideration for it. But if he introduces that idea of trading it, would you not consider that to be solicitation just because there's another provision that deals with trading? Well, if it had been his idea, if he brought it up and said, hey, how about you give me a webcam in exchange, I'll give you—then maybe that would be solicitation. Right. And so then the only question is, does the fact that the undercover agent was the first one to introduce it mean that forever the defendant's insulated from it because the idea was introduced by somebody else? He would have to—it also—he's not really soliciting the officer to have sex with the minor. I mean, that's not really what's discussed in their proposal for the webcam. What's discussed is the minor, like, lifting her skirt and other things, which I think the government is canning now. It comes very close to whether he was even soliciting sexual activity at all. The government has— See, that's—and I'm sorry to belabor this, but there's some focus on the words solicit participation with a minor. And as I understand the way the webcam would work, it is a sexual relationship between—or at least for that finite period—between the person who's on one end of the webcam and the person on the other end. It's just that they're not physically proximate. But there is an exchange going on. And isn't there at that moment during the webcam? You mean what the plan for the webcam was going to be? Well, just as a general matter, the way this would work is you have a webcam, which is a live exchange. In both ways, right? Right. So it is participation with the minor as between the defendant and the minor. Yeah. Although, I mean, I think what the other circuits have said is that has to be your—as Judge Ginsburg pointed out, you have to be soliciting a third party. I think they're soliciting sex with a minor—I mean, pardon me, by a minor. But actually, it's participation with a minor. I must be—the defendant must be soliciting someone other than the minor. I see. And I hear you that it would be the adult intermediary. That would be that. Because we're talking about the webcam, at least the idea of the webcam was that the minor and the UC would be on the camera. Well, they would be on the camera. But, I mean, as the government's pointed out, I mean, the really references that are in here is like, you know, could she lift her skirt and stuff like that. And we looked at whether that qualified—I mean, that is a sexual lascivious, I think, demonstration, but it's not necessarily sex between the UC and the minor, which is what it would have to be for that small two, B6 to apply, B6B. Sexually explicit. That seems like sexually explicit material. It's a sex with a minor. Yeah, but the overarching provision says— Participation with a minor. In sexually explicit conduct. Yes. I mean, you know, I think that the main thing we're resting on is that it's not solicitation by him, but two, is solicit participation with the minor. So solicit participation by the UC with a minor, in sex. Right. So, I mean, they'd have to be having— In sexually explicit conduct. Right. Not in sex. In sexually explicit conduct. I mean, here, I think what the government said, and what we agree with, is that most of the references are, you know, are just seeing her do various things, not necessarily sexual conduct between the UC and the minor. Really, that's not talked about much at all in this. And then, finally, I just want to—your Honor said it could—the B6 could be related to a later possible sexual encounter, like a live sexual encounter. But actually, B6B specifically says, if—I mean, B6 says, if for the purpose of producing sexually explicit material, or for the purpose of transmitting such material live, the offense involved these things. So I think that could not apply to a later sexual encounter. It would have to apply to what was going to go on in the webcam. Right. Unless that was going to be transmitted—unless a live sexual encounter, we're going to be transmitting— It could be transmitted at the much later date, with three of them there. Okay. Thank you. Thank you very much. Thank you. Thank you. Okay, just a minute.
judges: Srinivasan, Williams, Ginsburg